ARCHER & GREINER, P.C.
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Jeffrey Traurig
Email*:*  jtraurig@archerlaw.com

*Special Litigation Counsel for Howard P. Magaliff*
*Chapter 7 Trustee of Genesis BBQ USA, LLC*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x

| | |
|---|---|
| In re | Chapter 7 |
| GENESIS BBQ USA, LLC, | Case No. 16-22639 (RDD) |
| Debtor. | |

-------------------------------------------------------------------x

| | |
|---|---|
| HOWARD P. MAGALIFF, Chapter 7 Trustee of GENESIS BBQ USA, LLC, | Adv. Pro. No. - |
| Plaintiff, | |
| v. | |
| GENESIS CO., LTD., GENESIS BBQ CO., LTD., GENESIS BBQ GLOBAL CO., LTD, BBDOTQ USA, INC., BBDOTQ LLC, BBDOTQUSA KTOWN INC., BBDOTQ NYC KTOWN LLC, HYUN WOOK JOO a/k/a HARRY JOO, ABC CORPORATION 1-99 AND JOHN DOE 1-99, | |
| Defendants. | |

-------------------------------------------------------------------x

## <u>**COMPLAINT**</u>

Howard P. Magaliff, as Chapter 7 Trustee (the "<u>**Trustee**</u>" or "<u>**Plaintiff**</u>") of the

bankruptcy estate of GENESIS BBQ USA, LLC (the "<u>**Debtor**</u>"), by and through his

undersigned counsel, Archer & Greiner, P.C., for his complaint (the "**Complaint**") against GENESIS CO., LTD. ("**Genesis Co.**"), GENESIS BBQ CO., LTD. ("**Genesis BBQ**"), GENESIS BBQ GLOBAL CO., LTD ("**Global**" and together with Genesis Co. and Genesis BBQ, the "**Parent**"), BBDOTQ USA, INC. ("**BBDOTQ**"), BBDOTQ LLC ("**DOT LLC**"), BBDOTQUSA KTOWN INC. ("**BBDOTQ NY**"), BBDOTQ NYC KTOWN LLC ("**BBDOTQ NJ**", and together with BBDOTQ, DOT LLC and BBDOTQ NY, the "**BBDOTQ Entities**"), Hyun Wook Joo a/k/a Harry Joo ("**Joo**"), ABC Corporation 1-99 and John Doe 1-99 (collectively, the "**Defendants**" and each a "**Defendant**"), respectfully alleges as follows:

## NATURE OF THIS ACTION

1.      This proceeding is brought on behalf of the Debtor's estate seeking judgment against the Defendants for claims based on breach of fiduciary duty, aiding and abetting breach of fiduciary duty, conversion, avoidance and recovery of fraudulent transfers, turnover, accounting, unjust enrichment, tortious interference and successor liability. This proceeding also seeks an order subordinating, expunging and disallowing any and all claims filed by the Defendants, if any, against the Debtor.

2.      The Debtor was a franchisor of restaurants that operated using the BBQ Chicken name and intellectual property owned or authorized to be licensed by the Debtor.

3.      In 2012 and 2013, separate actions were commenced against the Debtor in the Superior Court of California (County of Los Angeles) (the "**California Court**"). During the time that two of the cases were pending, the Defendants engaged in a years' long scheme to divert the Debtor's assets to or for the benefit of the Parent and the BBDOTQ Entities.

2

4.      During this time, the Defendants completely and utterly disregarded the interests of the Debtor's other stakeholders and looked out for themselves and their corporate affiliates and left, among others, the Debtor's landlord and the counsel that had been retained in the state court actions unpaid while leaving behind an empty shell.

5.      While the California litigation was pending, the Defendants commenced and effectuated their scheme to divert the Debtor's assets to the Parent and the BBDOTQ Entities.

6.      The Parent and the BBDOTQ Entities used their own and the Debtor's officers (at least some of whom overlapped) to assist in the transfers.

7.      For instance, the Parent had Joo assign a trademark (including goodwill and the rights to royalties and payments) owned by the Debtor, and used by the Debtor's franchisees, to Genesis BBQ for $1.00.

8.      Upon information and belief, the Parent and one or more of the BBDOTQ Entities communicated with or directed David Kim a/k/a David Yong Jun Kim a/k/a Yung Jun Kim a/k/a Yong Jun Kim a/k/a Young Joon Kim ("**David Kim**") who was the Debtor's and BBDOTQ's chief executive officer to communicate with the Debtor's franchisees to pre-maturely terminate the Debtor's franchise agreements.

9.      David Kim then had the Debtor's former franchisees enter into new agreements with the BBDOTQ Entities for the benefit of the Parent and the BBDOTQ Entities.

10.      David Kim recently filed a personal chapter 7 bankruptcy case and is therefore not named as a defendant.

3

11.     Alternatively, the Defendants and David Kim held the Parent and the BBDOTQ Entities out as successors to the Debtor entitled to receive payments owed by franchisees to the Debtor.

12.     As a result, the Parent and one or more of the BBDOTQ Entities received the benefit of the Debtor's agreements to the detriment of the Debtor's creditors.

13.     During the time that the diversions were taking place, one or more of the BBDOTQ Entities established and shared offices at the same location as the Debtor's offices, used the Debtor's equipment and furniture, personnel and had overlapping officers, all without compensation to the Debtor.

14.     Moreover, this was done knowingly at a time that the Debtor had retained bankruptcy counsel.

15.     In fact, David Kim had authorized the filing of a chapter 11 bankruptcy case for the Debtor, at or about the same time the Debtor's franchisees were being diverted to the BBDOTQ Entities, more than a year before this chapter 7 case was filed.

16.     Thus, at the time the Debtor was insolvent and/or as a consequence whereof the Debtor became insolvent, the Defendants caused transfers from the Debtor to certain Defendants of the Debtor's (a) franchise agreements, (b) rights to franchise royalties and other payments, (c) use of trade names and marks, (d) recipes and trade secrets, (e) books and records, (f) executives and personnel, (g) furniture and business equipment and (h) corporate opportunities.

17.     This adversary proceeding seeks to right these wrongs.

## PARTIES

### The Debtor and Trustee

18.    The Debtor was incorporated in 2008 under the laws of the State of New Jersey.

19.    The Debtor was a franchisor of quick service restaurants that operated under various names, including BBQ Chicken.

20.    The Debtor's offices were located at One University Plaza, 6th floor, Hackensack, New Jersey (the "**Hackensack Premises**").   In or about January 2015, the Debtor's vacated the Hackensack Premises.   A judgment of possession evicting the Debtor from the Hackensack offices was entered.

21.    After vacating the Hackensack Premises, the Debtor conducted business out of One Bridge Plaza North, Fort Lee, New Jersey and 2134 North Central Road, Fort Lee, New Jersey.

22.    On May 10, 2016 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.* (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Southern District of New York, Case No. 16-22639 (RDD).

23.    The Trustee was appointed as the chapter 7 Trustee of the Debtor, and has accepted his appointment, duly qualified and is acting as the trustee.

24.    On the Schedules filed with the Court on May 26, 2016, the Debtor scheduled secured creditors holding $96,219.07 in claims with a secured value of $0.00. (Docket No. 5).

25.    On the Schedules filed with the Court on May 26, 2016, the Debtor scheduled creditors holding $1,117,315.70 in general unsecured claims plus certain additional claims in unknown amounts.

26.    The Court entered an Order establishing April 13, 2018, as the last day to file claims against the Debtor's estate.

27.    As of April 30, 2018, claims were filed in the aggregate amount of $275,508.22.  In addition, one claim was filed in an unliquidated amount.

**The Parent**[1]

28.    Upon information and belief, Defendants Genesis Co., Genesis BBQ and/or Global were the Debtor's direct or indirect parent companies during the relevant times asserted herein.

29.    Genesis Co. is a South Korean corporation, having its headquarters at Genesis Building located at 150-25 Mun Jeong Dong, Songpa-Gu, Seoul, South Korea.

30.    Genesis BBQ is a South Korean corporation with an address of 64 Jungdae-No, Songpa Ku, Seoul 138-885, South Korea.

31.    Upon information and belief, the Genesis Co. or Genesis BBQ formed Global as a subsidiary in South Korea.

32.    Upon information and belief, Global also is located at 64 Jungdae-No, Songpa Ku, Seoul 138-885, South Korea.

33.    Upon information and belief, Global was founded at a time when the Debtor was having continuing deficits.

---

[1]  Documents provided to or obtained by the Trustee reflect different entities as shareholders or the parent of the Debtor.

6

34.    Upon information and belief, Global was formed to run and manage, directly or indirectly, one or more of the BBDOTQ Entities in the United States.

35.    Global was listed as a foreign shareholder of the Debtor for the period January 1, 2015 through December 31, 2015 on Internal Revenue Service Form 5472.

36.    Pursuant to the Debtor's "Franchise Disclosure Statement" provided to potential franchisees, Genesis Co. was described as the Debtor's parent company.

37.    In addition to describing Genesis Co. as the Debtor's parent company, the Debtor's "Franchise Disclosure Statement" also describes Genesis BBQ as the Debtor's parent company.

38.    Genesis Co. was founded in 1995 and, pursuant to the Debtor's "Franchise Disclosure Statement," "had grown to be the largest and most respected franchise brand in South Korea with more than 3,500 stores nationwide."

39.    Genesis Co. expanded its franchise business into the global market and had a goal to become the world's best franchise group by the year 2020.

40.    Pursuant to the Debtor's "Franchise Disclosure Statement", in June 2006, the Genesis Co. made and entered into a Master Franchise Agreement with Phoenix USA Corporation ("**Phoenix**"), formed on June 12, 2006.

41.    On September 13, 2010, Genesis Co. terminated the Master Franchise Agreement with Phoenix so that it could offer new franchisees to the Phoenix franchisees through the Debtor.

42.    Upon information and belief, Genesis Co. or Genesis BBQ founded Global to be dedicated to overseas business.

43.    Upon information and belief, Genesis Co. or Genesis BBQ founded Global due to continuing deficits at Genesis Co. and/or Genesis BBQ and a cancellation of disclosure documents by the Fair Trade Commission as a result of falsifying information including the number of its members.

**BBDOTQ**

44.    BBDOTQ was incorporated on August 19, 2014 under the laws of the State of New Jersey.  Its offices are located at 2134 North Central Road, Fort Lee, New Jersey 07024.

45.    During portions of 2015 and throughout 2016 until the Petition Date, BBDOTQ and the Debtor shared offices, employees, staff and equipment.

46.    Upon information and belief, BBDOTQ is an entity owned and controlled by Global (either directly or indirectly).

47.    BBDOTQ was listed on the Debtor's Internal Revenue Service Form 5472 as a "Related Party" to the Debtor and Global for the period January 1, 2015 through December 31, 2015.

48.    Joo was the registered agent for BBDOTQ until on or about November 7, 2016, when Choonhum Kim became BBDOTQ's new registered agent.

49.    Pursuant to a Rule 2004 examination of Joseph Kim a/k/a Hyong Bong Kim ("**Joseph Kim**"), the Debtor and BBDOTQ had the same shareholder – Global.

50.    Joseph Kim was appointed by Global to be the Chief Executive Officer of the Debtor after David Kim.

51.    Upon information and belief, Joseph Kim is a senior executive of BBDOTQ and pursuant to his Rule 2004 testimony in charge of operations at BBDOTQ.

52.     Joseph Kim testified that BBDOTQ was engaged in the same business as the Debtor to be the franchisor for Global.

53.     According to the BBDTOQ website, as of April 25, 2018, BBDOTQ had 17 locations that it owned or franchised (the "**BBDOTQ Locations**").

54.     At least 5 of the BBDOTQ Locations were located at the same locations as the Debtor's franchisee locations.

## DOT LLC

55.     DOT LLC was formed on or about July 3, 2014, under the laws of the State of New Jersey, with a main business address of 321 Broad Avenue, Ridgefield, New Jersey 07657.

56.     Joshua Lee ("**Lee**") was named the member or manager of DOT LLC.

57.     Upon information and belief, Lee was the President of the Debtor in 2014.

58.     Upon information and belief, the Debtor applied for and obtained an H1B visa for Lee.

## BBDOTQ NJ

59.     BBDOTQ NJ was formed on or about March 23, 2015 under the laws of the State of New Jersey.

60.     On or about March 30, 2015, BBDOTQ NJ filed a Certificate of Correction to name BBDOTQ as the member/manager of BBDOTQ NJ.

61.     BBDOTQ NJ's main business address was 1 Bridge Plaza North, Suite 275, Fort Lee, New Jersey 07024 pursuant to its certificate of incorporation.

62.     Upon information and belief, BBDOTQ NJ and the Debtor conducted business out of the same premises.

**BBDOTQ NY**

63.     BBDOTQ NY was incorporated on or about January 7, 2016, under the laws of the State of New York.

64.     As of April 24, 2018, the registered agent for BBDOTQ NY was David Kim at an address of 25 West 32nd Street, New York, New York 10001 (the "**BBDOTQ NY**", and together with BBDOTQ NJ and BBDOTQ, the "**BBDOTQ Entities**").

65.     The BBDOTQ NY location is one of the restaurant locations listed on BBDOTQ's website.

**Joo**

66.     Upon information and belief, Joo is an individual residing in New Jersey at 100 Old Palisade Road, Apt. 3910, Fort Lee, New Jersey 07024.

67.     Before 2013, Joo served in various management positions at the Debtor including as chief financial officer.

68.     Joo was appointed as the president of the Debtor by Genesis Co. or Genesis BBQ in 2013.

69.     During the years 2013 through at least September 2014, Joo remained the president of the Debtor and took direction from the Parent.

70.     Upon information and belief, Joo was employed by or otherwise conducted business for BBDOTQ NJ during all relevant times herein.

71.     Joo worked at the Debtor's location of One Bridge Plaza North, Fort Lee, New Jersey in February 2015.

72.     Upon information and belief, Joo continued to be the chief financial officer of the Debtor in February 2015 and at all relevant times.

**David Kim**

73.     Upon information and belief, David Kim is an individual residing in New York.

74.     David Kim filed a chapter 7 case in the United States Bankruptcy Court for the Southern District of New York on March 1, 2018, Case No. 18-22346 (RDD). Accordingly, David Kim is not named as a defendant as a result of the automatic stay imposed in his case.

75.     David Kim is represented by the same counsel that filed the Debtor's chapter 7 case.  David Kim did not schedule the Debtor as a creditor in his chapter 7 case.

76.     David Kim was the chief executive officer of the Debtor for the period January 2015 until October 2016.

77.     Upon information and belief, David Kim took direction from the Parent (either directly or indirectly).

78.     David Kim also was the chief executive officer of BBDOTQ in 2015 and 2016 and all relevant times.

79.     David Kim assisted the Parent and BBDOTQ in forming BBDOTQ NY in 2016.

80.     David Kim signed the Debtor's petition as Yong Jun Kim.

81.     David Kim is the Registered Agent of BBDOTQ NY.

11

## JURISDICTION AND VENUE

82.    This United States Bankruptcy Court for the Southern District of New York (this "**Court**") has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157, 1331 and 1334.

83.    This adversary proceeding is brought pursuant to, *inter alia*, sections 105(a), 502, 541, 542, 548 and 550 of the Bankruptcy Code and Rule 7001(1) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

84.    This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

85.    Venue of this action is proper in this Court pursuant to 28 U.S.C. § 1409.

86.    Pursuant to Rule 7008 of the Bankruptcy Rules, the Trustee states that he consents to the entry of final orders or judgment by this Court.

## FACTUAL BACKGROUND

### Franchise Agreements

87.    Pursuant to franchise agreements entered into by the Debtor and its franchisees, the franchisees were authorized to operate barbeque chicken restaurants utilizing various marks, intellectual property, recipes and trade secrets that the Debtor owned or was otherwise authorized to license to franchisees.

88.    Pursuant to the franchise agreements, the franchisees were required to pay certain fees to the Debtor, including fees related to advertising, royalty and franchise fees.

89.    Pursuant to the franchise agreements, the franchisees were required to provide the Debtor with gross sales information each week.

90.     Pursuant to the franchise agreements, the franchisees were required to pay a royalty fee to the Debtor in the amount of 7% of gross sales.

91.     Pursuant to the franchise agreements, the franchisees were obligated to pay interest at 1% per month for arrears from the date due until paid.

**The Debtor's Insolvency**

92.     Based upon representations of David Kim on his LinkedIn page, the Debtor had been incurring seven digit losses annually for at least several years before the Petition Date.

93.     At least as early as June 1, 2014, the Debtor was insolvent.

94.     At least as early as June 2014, the Debtor was not paying all of its bills as they came due.

95.     Based on the balance sheets provided to the Trustee, the Debtor was insolvent on a balance sheet basis as of June 1, 2014.

96.     Based on the balance sheets and documents provided to the Trustee, as of June 1, 2014, the Debtor had total assets of $764,696.82 and total liabilities of $780,730.58.

97.     Based on a proof of claim and documentation provided to the Trustee in support of a claim filed by a creditor, the Debtor did not make payments to its California litigation counsel for services rendered in May 2014 through January 2015.

98.     Based on the balance sheets provided to the Trustee, the Debtor was insolvent on a balance sheet basis as of December 31, 2014.

99.     Based on the balance sheets provided to the Trustee, as of December 31, 2014, the Debtor had total assets of $738,222.19 and total liabilities of $1,498,548.86.

13

100.    In addition, the plaintiffs in the California litigation asserted claims against the Debtor dating back to at least 2012.

101.    On April 21, 2015, the Superior Court of New Jersey Law Division issued a *Final Judgment Against Genesis BBQ USA, LLC* (the "**Landlord Judgment**"), signed and entered in the amount of $89,003.07 plus interest.  A proof of claim was filed by Venture Hackensack, LLC ("**Venture**") asserting the amount of the Landlord Judgment. Based on the proof of claim, the Debtor failed to make payment to Venture beginning no later than January 1, 2015.

**The California Litigation**

102.    On or about November 27, 2012, Kenneth Kim and Eun Ae Kim ("**Kenneth and Eun**") commenced an action (Case No. BC495922) in the California Court asserting claims against, among others, the Debtor.

103.    On December 6, 2013, Tae Ho Lee ("**Lee**") commenced an action (Case No. BC529869) in the California Court asserting claims against, among others, the Debtor.

104.    Both California litigations remained pending in 2014 and 2015 during the times of the transfers of assets described below.

**The Diversion of Assets**

105.    In July and August 2014, the Parent and various fiduciaries of the Debtor began forming and incorporating certain of the BBDTOQ Entities.

106.    In doing so, the Defendants began the transfer of the Debtor's assets.

14

### Transfer of the Debtor's Trademark

107.    On September 19, 2014, the Debtor executed a "Trademark Assignment", which assigned the Debtor's stylized BBQ Chicken mark (United States Registration No. 4579470) (the "**Trademark**") to Genesis BBQ, together with all goodwill associated with the Trademark (including the rights to royalty payments).

108.    The consideration for the trademark assignment was "the sum of One (1) Dollar…." as set forth in the recorded assignment document.

109.    The assignment document was recorded with the trademark assignment recordation department.

110.    As a result of the Trademark Assignment, the Debtor no longer had standing to enforce infringement of the Trademark against entities that improperly used the Trademark.

### Retention of Bankruptcy Counsel

111.    No later than January 2015, the Debtor was seeking advice regarding the Debtor's financial difficulties and a potential bankruptcy filing.

112.    Pursuant to the Debtor's statement of financial affairs filed with the Court on May 26, 2016 [Doc. No. 5], the Debtor or an entity on the Debtor's behalf, paid $5,000 to the Debtor's counsel on or about January 25, 2015 in connection with commencing a bankruptcy proceeding for the Debtor.

113.    Pursuant to the Debtor's books and records, the Debtor paid $11,717 to the Debtor's counsel on January 5, 2015.

114.    Pursuant to the Certificate of Resolutions filed with the Court on May 27, 2016, the Board of Directors of the Debtor adopted resolutions, as of June 16, 2015,

authorizing, among other things, the filing of a voluntary petition under chapter 11 of title 11 of the Bankruptcy Code.

115.    Notwithstanding the retention of bankruptcy counsel in at least as early as January 2015, the Debtor did not file a bankruptcy until May 2016.

116.    Rather, the Debtor continued on a path of diverting assets to its affiliates during that delay.

**The Transfer and Termination of Franchise Agreements**

117.    As set forth above, DOT LLC was formed in July 2014 and BBDOTQ was incorporated on August 19, 2014.

118.    DOT LLC was formed and BBDOTQ was incorporated while the California Litigation was pending.

119.    DOT LLC was formed approximately two months before the Trademark was assigned by the Debtor to the Parent.

120.    BBDOTQ was incorporated approximately one month before the Trademark was assigned by the Debtor to the Parent.

121.    Prior to May 2015, the Debtor had franchise agreements with persons or entities operating BBQ Chicken restaurants at, among other locations, (a) 651 Anderson Avenue, Cliffside Park, New Jersey, (b) 10 East Edsall Boulevard, Palisades Park, New Jersey, (c) 158-23 Northern Boulevard, Flushing, New York, (d) 2151 Lemoine Avenue, Fort Lee, New Jersey, and (e) 251-16 Northern Boulevard, Little Neck, New York (the "**Debtor Franchisees**").

122.    Upon information and belief, David Kim in concert with DOT LLC, BBDOTQ, BBDOTQ NJ and Global, at the direction of Genesis Co. or Genesis BBQ, in early

16

2015 (if not before), improperly terminated one or more franchise agreements with franchisors without proper compensation to the Debtor.

123. Alternatively, David Kim, in concert with DOT LLC, BBDOTQ, BBDOTQ NJ or Global, at the direction of Genesis Co. or Genesis BBQ, in early 2015 (if not before), informed one or more franchisees that BBDOTQ (or another BBDOTQ Entity) or Global was the successor to the Debtor and that payments on account of franchise agreements with the Debtor were to be made to one or more of the BBDTOQ Entities or the Parent.

124. The Debtor did not receive reasonably equivalent value or any compensation from the BBDOTQ Entities or the Parent, or any other party, in connection with the transfer of the franchise benefits, including royalty and other payments that the Debtor was otherwise entitled to receive.

125. For instance, based on a complaint (the "**SHKIM Complaint**") filed in the United States District Court for the District of New Jersey by Sunghoon Kim and SHKIM Corp. (together, "**SHKIM**") against the Parent and BBDOTQ, David Kim informed SHKIM in May 2015 that the Debtor would be reorganized and that a new entity would be formed. Upon information and belief, that entity was BBDOTQ, BBDOTQ NJ or Global.

126. At or about the same time as the new entity was being formed, David Kim became the new chief executive of BBDOTQ.

127. The SHKIM Complaint asserted that David Kim informed Sunghoon Kim, that BBDOTQ "was the complete successor of all the powers and duties of [the Debtor] established in the contract between [SHKIM and the Debtor]."

128. The Trustee understands that the SHKIM Complaint was dismissed on jurisdictional and procedural grounds.

129.     The Trustee has not been provided with the accountings required by the franchise agreements with the Debtor Franchisees which, upon information and belief, were provided to one or more of the BBDOTQ Entities or the Parent to enable one or more of the BBDOTQ Entities or the Parent to be able to collect from the Debtor Franchisees.

130.     Upon information and belief, the Parent or one or more of the BBDOTQ Entities received payments from one or more of the Debtor Franchisees or other franchisees before the Petition Date.

131.     Payments made to the Parent or one or more of the BBDOTQ Entities by the Debtor Franchisees or other franchisees were payments that the Debtor was otherwise entitled to receive.

132.     Upon information and belief, as of the Petition Date, each of the Debtor Franchisees was continuing to operate a restaurant under the name BBQ Chicken or similar names such at BB.Q or BB.Q Olive Chicken, using similar marks, recipes and trade secrets they had used as a Debtor franchise.

133.     Upon information and belief, after the Petition Date, one or more of the BBDOTQ Entities or the Parent received payments from one or more of the Debtor Franchisees on account of royalties and other payment obligations under the Debtor Franchisee agreements that the Debtor would have been entitled to receive had the Debtor not transferred the Trademark to the Parent or not otherwise transferred the Debtor's opportunities to one or more of the BBDOTQ Entities.

**The Transfer of Accounts Receivable to the BBDOTQ Entities**

134.    The Debtor's books and records reflect journal entries that the Debtor had, in April 2015, factored some, but not all, accounts receivable due and owing from the Defendant to BBDOTQ or to one of the other BBDOTQ Entities.

135.    Included among accounts receivable purportedly transferred to BBDOTQ or to one of the other BBDOTQ Entities, were amounts owed by Lee & Lim LLC and Yuwon Corp., each of which was a franchisee of the Debtor.

136.    To the extent that the Debtor actually transferred accounts receivable to BBDOTQ or one of the other BBDOTQ Entities, the Debtor's books and records reflect that the Debtor did not receive the face value for such accounts receivable.

137.    Notwithstanding a general ledger entry, the Debtor's books and records, as provided to the Trustee, do not reflect that accounts receivable were transferred to the BBDOTQ Entities or any of the other BBDOTQ Entities for value.

138.    Notwithstanding a general ledger entry, the Debtor's books and records, as provided to the Trustee, do not reflect a valid transfer of accounts receivable to the BBDOTQ Entities for value.

139.    The Debtor's books and records, provided to the Trustee do not reflect that the BBDOTQ Entities paid the Debtor for the transfer of accounts receivable to the BBDOTQ Entities.

140.    The Trustee has not been provided with any agreement reflecting the transfer of accounts receivable to the BBDOTQ Entities.

19

141.   The Debtor's books and records, as provided to the Trustee do not reflect that the Debtor received payment in full for the amount of any accounts receivable transferred to the BBDOTQ Entities.

142.   Upon information and belief, the franchisees that owed the Debtor amounts under their respective franchise agreements made those payments to the Parent, one or more of the BBDOTQ Entities or Global without fair value being paid to the Debtor.

**Transfers to or for the Benefit of Genesis Co.**

143.   On July 16, 2014, the Debtor transferred $25,821.60 (the "**July Transfer**") to Genesis Co.

144.   The Debtor's books and records reflect a reference to a "Pizzaria Website Development Fee" on account of the July Transfer.

145.   Upon information and belief, the Debtor did not receive any benefit in connection with the July Transfer.

146.   On December 12, 2014, the Debtor transferred $17,897.10 (the "**December Transfer**") to Genesis Co.

147.   The Debtor's books and records provided to the Trustee do not reflect the basis for the December Transfer.

148.   Upon information and belief, the Debtor did not receive any benefit in connection with the December Transfer.

**Additional Transfers**

149.   It is the Trustee's intention to avoid and recover all of the Debtor's avoidable transfers to or for the benefit of Defendants or other transferees of an interest of the Debtor in property.

150.    During the course of this proceeding, the Trustee may learn (through discovery or otherwise) of additional transfers made to the Defendants during the two years before the Petition Date.

151.    The Trustee reserves his right to amend this Complaint to include: (i) further information regarding transfers to the Defendants and any additional avoidable transfer(s) or sums that are recoverable due to the Defendants' breaches of their fiduciary duties and the other causes of action asserted herein, (ii) modifications of and/or revisions to Defendants' names, (iii) additional defendants, and/or (iv) additional claims for relief.

### First Cause of Action
**(Breach of Fiduciary Duty and
Aiding and Abetting Breaches of Fiduciary Duty)**

152.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

153.    As officers, controlling shareholders and insiders of the Debtor, the Defendants owed the Debtor fiduciary duties of care and loyalty.

154.    The Parent and Joo knew that the Debtor was insolvent and undercapitalized at all times from April 2014 and onward.  Nevertheless, the Parent and Joo allowed the Debtor to continue transacting business with third party creditors and failed to ensure that the Debtor had sufficient capital to remain viable or to ensure that its creditors were paid.

155.    The Debtor, with knowledge and support from the Parent, retained counsel in the California Litigation but then failed to pay that counsel's fees.

156.    Further, rather than effectuating a reorganization or restructuring plan that could maximize recoveries for its creditors, the Parent, Joo and David Kim embarked on a path of diverting assets.

157.    As set forth above, Joo, as an officer of the Debtor, transferred to the Parent the Trademark for consideration of only $1.

158.    The Trademark was used by the Debtor's franchisees at the time and the Debtor would have been able to recover damages for the unauthorized use of the Trademark.

159.    Certain of the Debtor Franchisees continued to use the Trademark at their locations continuing through 2017, including SHKIM.

160.    In addition, upon information and belief, the Trademark had extrinsic value and could have been marketed and the Debtor would have received more than $1 for the transfer of the Trademark.

161.    By transferring the Trademark for less than fair value and without any marketing efforts to determine its fair value, the Parent and Joo breached their fiduciary duties to the Debtor and its creditors.

162.    Similarly, David Kim and BBDOTQ, in concert with the Parent and one or more of the other BBDOTQ Entities, embarked on and effectuated a plan whereby the Debtor Franchisees were transferred to one or more the BBDOTQ Entities or Global, either as a new franchisor or as the successor to the Debtor.

163.    Such transfers of the franchise relationships were done without a marketing process as to the value of the Debtor's interests in the franchises and without reasonably equivalent compensation to the Debtor.

164.   In addition, upon information and belief, David Kim assisted the Debtor with vacating its premises at the Hackensack location and permitted the BBDOTQ Entities to utilize assets of the Debtor, including furniture and office equipment, without reasonably equivalent value provided to the Debtor.

165.   Further, upon information and belief, Joo and David Kim, had the opportunity to use corporate opportunities for the benefit of the Debtor and its creditors.

166.   Instead, David Kim, Joo, the Parent, BBDOTQ and Global used the Debtor's corporate opportunities for the benefit of one or more of the BBDOTQ Entities or Global.

167.   For instance, David Kim has described on his LinkedIn.com page that he was the Chief Executive Officer of BBDOTQ USA, Inc./Genesis BBQ for the period January 2015-October 2016.

168.   On his LinkedIn.com page, David Kim described his work for the Debtor and BBDOTQ, as the chief executive officer of the Debtor and BBDOTQ, as follows:

> "Headed the USA entity reporting direct to the Chairman.restructured the company incurring seven digit loss annually for past nine years and established positive revenue and cash flow within 20 months. Developed new business plan focusing on major food service industry entering partnership with Pepsico. Installed new SCM with manufacturers and service companies resulting in double digit returns and develop additional franchisees. Established relationships with major Market chains to install free standing kiosks within its locations with BBQ branding."

169.   In doing so, David Kim effectively acknowledges and admits that the Debtor and BBDOTQ are one and the same and that BBDOTQ is a successor to the Debtor that should be responsible for its debts.

170.    Alternatively, BBDOTQ is a separate entity that David Kim and BBDOTQ utilized as a place to transfer valuable franchisee assets from the Debtor and leave behind the Debtor as a shell without value or ability to pay its creditors.

171.    As of the date hereof, at least three of the Debtor's former franchisees are operating under BBDOTQ at the same locations as they operated as franchisees of the Debtor.

172.    Moreover, as set forth above, upon information and belief, David Kim permitted journal ledger entries to be placed into the Debtor's books and records to further a scheme whereby certain accounts receivable owed to the Debtor would then be paid to BBDOTQ, the Parent or one of the other BBDTOQ Entities.

173.    Upon information and belief, the Debtor did not receive reasonably equivalent value for such transfers.

174.    Further, upon information and belief, David Kim directed payments that were owed to the Debtor to be directed and paid to one or more of the BBDOTQ Entities.

175.    Notwithstanding the Debtor having retained bankruptcy counsel in January 2015, if not earlier, Joo and David Kim did not protect the Debtor's assets.

176.    On June 16, 2015, David Kim (under the name Yung Kim) executed certificate resolutions authorizing the Debtor to commence a case under chapter 11 of the Bankruptcy Code.

177.    At the time the June 16, 2015 resolutions were passed, the Debtor did not commence a bankruptcy petition.

178.    Instead, Joo, David Kim and the Debtor waited nearly a year until May 10, 2016 to commence a chapter 7 case.

24

179.    During the time that bankruptcy counsel was retained and before the Debtor commenced its bankruptcy case, BBDOTQ NJ and BBDOTQ NY were formed, with BBDOTQ NY becoming a flagship location.

180.    Upon information and belief, during all relevant times, Joo and David Kim did not properly preserve the Debtor's books and records or intercompany agreements.

181.    Even a cursory review of the Debtor's schedules and statement of financial affairs reveal that they are severely lacking.

182.    The Debtor's schedules and statement of financial affairs do not provide adequate information as to the location of the Debtor's books and records or the Debtor's management.

183.    Further, according to the schedules and statement of financial affairs, despite having revenue of $245,005 during the period January 1, 2015 to December 31, 2015, the Debtor waited until it had no assets to file the case.

184.    By waiting and not conducting any meaningful business during that year, other than transferring assets to the Parent and the BBDOTQ entities, both Joo and David Kim allowed preference periods, fraudulent transfer, and other statutory time periods to pass.

185.    The Debtor was insolvent as of the date that the Avoidable Transfers (defined below) were transferred to the Parent or one or more of the BBDOTQ Entities.

186.    As a result of the Debtor's insolvency, the Defendants, their officers, controlling insiders and affiliates each owed fiduciary duties of care and loyalty to the Debtor and its creditors.

187.    As officers and fiduciaries, the Defendant, including Joo and David Kim had a duty to act at all times with the highest degree of good faith in the interests of the Debtor and its creditors.

188.    As fiduciaries, Joo and David Kim had a duty to act at all times using the amount of care that a reasonable person would use under similar circumstances to protect and further the interests of the Debtor and its creditors.

189.    Joo and David Kim owed the Debtor and its creditors fiduciary duties of care and loyalty not to use the Debtor's property solely for the benefit of the Debtor's affiliates from which they took direction.

190.    In the case of David Kim, upon information and belief he worked for the Debtor, BBDOTQ and BBDOTQ NY simultaneously.

191.    Joo and David Kim violated their fiduciary duties of care and loyalty, and acted with willful malfeasance and in bad faith, by making, permitting or causing to be made each of the transfers to or for the benefit of the Parent, BBDOTQ and Global because each of those transfers enabled the Parent, the BBDOTQ Entities and Global to use the Debtor's property solely for their own benefit rather than for the Debtor's benefit.

192.    The Parent and one or more of the BBDOTQ Entities, breached their own fiduciary duties and wrongfully aided and abetted the Debtor's other controlling insiders' breaches of fiduciary duty by making, permitting or causing to be made each of the transfers described above.

193.    The Parent and one or more of the BBDOTQ Entities' actions in aiding and abetting breaches of fiduciary duties to the Debtor were undertaken with willful malfeasance, in bad faith and in breach of their fiduciary duties.

194.   Each of the transfers injured the Debtor in the amount of each transfer.

195.   For the foregoing reasons, the Defendants are liable to the Debtor for breach of fiduciary duties, and for aiding and abetting breaches of fiduciary duties, in the amount of each of the transfers, including transfers of the Trademark, accounts receivable and other benefits that the Debtor was entitled to receive under franchise agreements.

196.   The Trustee is entitled to judgment and an order directing the Defendants to return to the estate of the Debtor, the value of the transfers or each transfer including the Trademark, franchisee agreements, accounts receivable and past and future revenue streams.

### Second Cause of Action
**(Avoidance of Intentional Fraudulent Conveyances
Pursuant to 11 U.S.C. §§ 548(a)(1)(A) and 550)**

197.   The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

198.   Each of the transfers (together, the "**Avoidable Transfers**") from the Debtor or from the Debtor Franchisees to or for the benefit of the Parent and the BBDOTQ Entities, described herein, were transfers of an interest of the Debtor in property in that they were each transfers of property owned by the Debtor.

199.   Each of the Avoidable Transfers described above, including the Trademark, franchisee agreements (including benefits thereunder), accounts receivable and revenue streams transferred to or for the benefit of the Parent or the BBDOTQ Entities, respectively, were made within two years before the Petition Date.

200.    Each of the Avoidable Transfers was made with actual intent to hinder, delay or defraud one or more entities to which the Debtor was or became indebted, on or after the date that such Avoidable Transfers were made.

201.    None of the Avoidable Transfers provided any benefit to the Debtor.

202.    The Debtor caused each of the Avoidable Transfers to be made in the knowledge that the Debtor was insolvent and with the actual intent that, by making the Avoidable Transfers, the Debtor would enable the recipient or immediate transferees of the Avoidable Transfers to benefit and profit at the expense of the Debtor's creditors.

203.    Each of the Avoidable Transfers hindered, delayed and defrauded the Debtor's creditors by improperly denying them the benefit of the property transferred.

204.    The Debtor received less than fair consideration or less than a reasonably equivalent value in exchange for each of the Avoidable Transfers.

205.    The Debtor (a) was insolvent on the date each of the Avoidable Transfers was made, or became insolvent as a result of the transfer; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was an unreasonably small capital; (c) intended to incur, or believed that the Debtor would incur, debts that would be beyond the Debtor's ability to pay as such debts matured; or (d) made the transfer to or for the benefit of an insider not in the ordinary course of business.

206.    For the foregoing reasons, the Trustee is entitled to avoid each of the Avoidable Transfers under section 548 of the Bankruptcy Code and to seek to recover them for the benefit of the Debtor's estate.

28

207.    In accordance with section 550(a) of the Bankruptcy Code, the Trustee is entitled to recover, for the benefit of the estate, the property transferred in each Avoidable Transfer, or if the Court so orders, the value of such property.

208.    For the foregoing reasons, the Parent and the BBDOTQ Entities are liable to the Trustee for the return of each Avoidable Transfer or for the value of that transfer.

**Third Cause of Action**
**(Avoidance of Constructive Fraudulent Conveyances**
**Pursuant to 11 U.S.C. §§ 548(a)(1)(B) and 550)**

209.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

210.    The Avoidable Transfers occurred within two years of the Petition Date.

211.    None of the Avoidable Transfers made to the Defendants provided any benefit to the Debtor.

212.    The Debtor received less than reasonably equivalent value in exchange for the Avoidable Transfers.

213.    The Debtor was insolvent at the time the Avoidable Transfers were made or became insolvent as a result of the Avoidable Transfers.

214.    At the time the Debtor made the Avoidable Transfers to the Defendants, the Debtor had incurred, was intending to incur, or believed that it would incur debts beyond its ability to pay as the debts matured.

215.    The Avoidable Transfers to the Defendants are avoidable pursuant to section 548(a)(1)(B) of the Bankruptcy Code and may be recovered from the Defendants pursuant to section 550 of the Bankruptcy Code.

29

216.    For the foregoing reasons, the Parent and the BBDOTQ Entities are liable to the Trustee for the return of each Avoidable Transfer or for the value of that transfer.

### Fourth Cause of Action
**(Accounting)**

217.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

218.    Upon information and belief, the Parent or the BBDOTQ Entities have in their possession, custody or control property of the Debtor's estate, including the Avoidable Transfers described above.

219.    The full value of the Debtor's property held by the Parent and the BBDOTQ Entities cannot be ascertained without an accounting from the Defendants.

220.    For the foregoing reasons, the Defendants have a duty to, and are required to, file with the Clerk of the Court and deliver to the Trustee a written account of all their receipts, transfers and disbursements of the Debtor's property or assets to or for the benefit of the Parent and the BBDOTQ Entities (an "**Accounting**").

221.    For the foregoing reasons, the Trustee is entitled to an order directing the Defendants to prepare and file an Accounting with the Clerk of the Court and to deliver a copy of the Accounting to the Trustee.

### Fifth Cause of Action
**(Unjust Enrichment)**

222.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

223.    Unjust enrichment exists when (1) a defendant benefits; (2) at another party's expense; and (3) equity and good conscience require restitution.

224. The benefits that the Defendants received from the Debtor had a value for which the Defendants did not properly compensate the Debtor.

225. The Debtor did not receive any, or adequate, consideration in exchange for the Avoidable Transfers.

226. Upon information and belief, in contrast, each Defendant unfairly benefitted by receiving and retaining the Avoidable Transfers and have been unjustly enriched thereby, resulting in the Debtor denying amounts rightfully due to their other creditors.

227. Further, as a result of the usurping of the Debtor's corporate opportunities, the Parent, BBDOTQ Entities and/or Joo are liable to the Trustee for the value of the opportunities received by them.

228. For the foregoing reasons, Parent, the BBDOTQ Entities and Joo are liable to the Trustee for the return of the Avoidable Transfers or for the value of transfers as well as the value of corporate opportunities usurped from the Debtor.

### Sixth Cause of Action
### (Tortious Interference with Contract)

229. The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

230. The Debtor had contracts with one or more of the Debtor Franchisees.

231. The Defendants were aware of the contracts between these parties.

232. The Defendants intentionally and/or maliciously procured a breach of the contract by a third party.

233. The Defendants' acts resulted in an actual breach of the contracts with the Debtor's franchisees.

31

234.    The Defendants caused the Debtor's franchisees to terminate their contracts with the Debtor and, or alternatively, held themselves out as the Debtor's successor.

235.    As a result, the Debtor did not receive payment from the Debtor's franchisees that the Debtor was entitled to recover.

236.    As a result of the interference and breach, the Debtor suffered damages.

237.    The Trustee is entitled to judgment and an order directing the Defendants to pay to the Debtor, the value of the amounts received by the Parent and the BBDOTQ Entities from the Debtor's franchisees plus past and future revenue streams.

**Seventh Cause of Action**
**(Successor Liability)**

238.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

239.    The Parent and the BBDOTQ Entities held themselves out as the Debtor.

240.    The Parent and the BBDOTQ Entities caused the termination of the contracts between the Debtor and the Debtor Franchisees to induce them into new franchise agreements to fraudulently escape responsibility for such debts and liabilities.

241.    Alternatively, the Defendants and David Kim, held the Parent and the BBDOTQ Entities out as successors to the Debtor entitled to receive the benefits of the Debtor Franchisee agreements and responsible for the liabilities.

242.    BBDOTQ and BBDOTQ NJ maintained offices in the same location as the Debtor, had the same Chief Executive, and used the Debtor's equipment and assets.

243.    The transactions and assignments to BBDOTQ and BBDOTQ NJ were made fraudulently between the Parent, BBDOTQ and BBDOTQ NJ to enable the Debtor to escape its obligations to its creditors.

244.    The Trustee is entitled to judgment and an order requiring the Parent and the BBDOTQ Entities to pay to the Debtor's estate amounts sufficient to satisfy all of the Debtor's obligations in full.

### Eighth Cause of Action
### (Conversion)

245.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

246.    The Debtor had a possessory right and interest to its property, including but not limited to accounts receivable of the Debtor Franchisees, recipes, goodwill, other contract rights, interests and intellectual property.

247.    The Defendants converted the Debtor's property.

248.    The Parent and the BBDOTQ Entities converted and continue to use rights and property of the Debtor, including but not limited to the Debtor's accounts receivable of the Debtor Franchisees, recipes, goodwill, other contract rights, interests and intellectual property.

249.    The Debtor and its creditors were deprived of the use of the Debtor's rights and property.

250.    As a direct and proximate result of this conduct, the Debtor and its creditors have not had the use or benefit of the Debtor's rights and property.

251.    By reason of the above, the Trustee is entitled to an award of compensatory damages, in an amount to be determined at trial.

33

252.    The Trustee is entitled to judgment and an order directing the Defendants to return to the Debtor, the property or the value thereof, of each converted right or property including the Trademark, franchisee agreements, receivables and revenue streams.

253.    The Trustee demands the entry of judgment against the Defendants for compensatory damages, special damages and consequential damages to be determined at trial, along with an award of pre-judgment interest and costs, and for such other relief and this Court may deem just and proper.

### Ninth Cause of Action
### (Turnover of Property of the Estate)

254.    The Trustee repeats and realleges the allegations in the preceding paragraphs of this Complaint as if fully set forth herein.

255.    The Parent and the BBDOTQ Entities are in possession, custody or control of property, subject to the ownership of the Debtor, that the Trustee may use, sell or lease under section 363 of the Bankruptcy Code.

256.    Pursuant to section 542 of the Bankruptcy Code, the Parent and the BBDOTQ Entities each have an obligation to deliver to the Debtor, and account for all the Debtor's property in its possession, custody or control.

257.    The Parent and the BBDOTQ Entities are liable to the Trustee for the return of all the Debtor's property in their respective possession, custody or control, or of the value of that property.

258.    The Parent and the BBDOTQ Entities are required to deliver to the Trustee, and to provide the Trustee with an accounting of, all of the Debtor's property in their respective possession, custody or control, or of the value of that property (including the

payment streams paid or which the Debtor would be entitled to receive from the Debtor

Franchisees or other franchisees of the Debtor).

259.     The Trustee is entitled to an order directing the Parent and the

BBDOTQ Entities to deliver to the Trustee, and to provide the Trustee with an accounting of,

all of the Debtor's property in their possession, custody or control, or the value of that

property.

**Tenth Cause of Action**
**(Subordination and Disallowance of Claims)**

260.     The Trustee repeats and realleges the allegations in the preceding

paragraphs of this Complaint as if fully set forth herein.

261.     Pursuant to section 502(d) of the Bankruptcy Code, the Court shall

disallow any claim of any entity from which property is recoverable hereunder including

under sections 542, 543, 550 or 553 of the Bankruptcy Code or that is a transferee of a

transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of the

Bankruptcy Code, unless such entity or transferee has paid the amount, or turned over any

such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550

or 553 of the Bankruptcy Code.

262.     To date, none of the Defendants have filed a proof of claim.  To the

extent any proof of claim is filed by the Defendants, such claim should be disallowed until the

Defendant has paid the Debtor's estate the amount, or turned over any property, for which he

is liable, or it is liable, under section 522(i), 542, 543, 550 or 553 of the Bankruptcy Code.

263.     Pursuant to section 510(c) of the Bankruptcy Code, the Court may,

under principles of equitable subordination, subordinate and disallow for purposes of

distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest.

264.    As set forth above, each of the Defendants has inequitably and outrageously injured the Debtor by taking the Debtor's property for its own purposes, or by aiding and abetting others' conduct in taking the Debtor's property for their own purposes, thereby injuring the Debtor and causing significant losses.

265.    Any claim of the Defendants asserted against the Debtor should be equitably disallowed or subordinated to the claims of every other unsecured creditor of the Debtor.

266.    Equitable subordination or disallowance as requested herein is fully consistent with the provisions and purposes of the Bankruptcy Code.

267.    For the foregoing reasons, the Trustee is entitled to an order and judgment disallowing or subordinating the claims of the Defendants who assert claims against the Debtor.

### DEMAND

**WHEREFORE**, the Trustee respectfully requests that this Court enter judgment in his favor and against the Defendants on all counts of this Complaint and enter an Order as follows:

    a.  On the Trustee's First Cause of Action, awarding the Trustee damages for the Defendants' breaches of fiduciary duties and aiding and abetting breaches of fiduciary duties;

    b.  On the Trustee's Second Cause of Action, awarding the Trustee the return of each Avoidable Transfer received, or of which it received the benefit, or damages in the amount of the value of that Transfer;

c.  On the Trustee's Third Cause of Action, awarding the Trustee the return of each Avoidable Transfer received, or of which it received the benefit, or damages in the amount of the value of that Transfer;

d.  On the Trustee's Fourth Cause of Action, directing the Defendants to file an Accounting with the Clerk of the Court and to deliver a copy of the Accounting to the Trustee;

e.  On the Trustee's Fifth Cause of Action, awarding the Trustee the return of each Avoidable Transfer received, or of which it received the benefit in the amount of the value of that Transfer by which Defendant was unjustly enriched;

f.  On the Trustee's Sixth Cause of Action, awarding the Trustee damages for the Defendants' tortious interference with contract;

g.  On the Trustee's Seventh Cause of Action, awarding the Trustee damages for the Defendants' successor liability;

h.  On the Trustee's Eighth Cause of Action, awarding the Trustee the return of the Debtor's property and damages resulting from the conversion of the Debtor's assets;

i.  On the Trustee's Ninth Cause of Action, directing the Defendants to turn over the Debtor's property or the value of that property

j.  On the Trustee's Tenth Cause of Action, disallowing or subordinating any and all claims of the Defendants as against the Debtor's estate; and

k.  Granting the Trustee such other and further relief as is just and proper, including the payment of pre-judgment and post-judgment interest.

Dated: New York, New York
      May 9, 2018

ARCHER & GREINER, P.C.

By:_____/s/ Jeffrey Traurig_____
    Jeffrey Traurig
630 Third Avenue
New York, New York 10017
Tel:  (212) 682-4940
Email: jtraurig@archerlaw.com

*Special Litigation Counsel for*
*Howard P. Magaliff, Chapter 7*
*Trustee of Genesis BBQ USA, LLC, Debtor*